IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

| | |
|---|---|
| **LOIS GILMORE** )<br>c/o Cornerstone Law Firm )<br>5821 NW 72nd Street )<br>Kansas City, MO 64151 )<br>    )<br>Plaintiff, )<br>    )<br>v. )<br>    )<br>**PREMIER CONTRACTING, INC.** )<br>*Serve Registered Agent:* )<br>BRCS, Inc. )<br>3712 Eastvale Dr. )<br>Fairway, KS 66605 )<br>    )<br>Defendant. ) | Case No. _____<br><br>**REQUEST FOR JURY TRIAL** |

## COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff Lois Gilmore, by and through her attorney, and for her cause of action against Defendant Premier Contracting, Inc., states and alleges as follows:

### Parties and Jurisdiction

1. This is a wrongful discharge and retaliation case based upon and arising under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. and Kansas common law.

2. Plaintiff Lois Gilmore (hereinafter "Plaintiff") is a female citizen currently domiciled in Platte City, Platte County, Missouri.

3. Defendant Premier Contracting, Inc. (hereinafter "Premier") is and was at all times relevant a Kansas corporation organized under the laws of Kansas with a principal place of business located in Kansas City, Wyandotte County, Kansas.

4. At all times relevant, Premier was authorized to conduct business in the State of Kansas and does conduct substantial and continuous business in the State of Kansas.

5. Specifically, Premier owns and operates a roofing company located at 3940 South Ferree Street, Kansas City, Wyandotte County, Kansas 66103.

6. At all relevant times, Premier has been an "employer" engaged in trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof.

7. At all relevant times, Premier has been an "employer" engaged in interstate "commerce" within the meaning of the FLSA.

8. At all relevant times, Premier has had employees engaged in trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof.

9. At all relevant times, Premier's annual gross volume of sales made or business done was not less than $500,000.00.

10. At all relevant times, Premier has been an "enterprise engaged in commerce" within the meaning of the FLSA.

11. At all relevant times, Premier has employed "employee[s]," including Plaintiff.

12. At all relevant times, Premier's employees, including Plaintiff, were engaged in commerce and/or worked for Premier which is an enterprise engaged in commerce.

13. Premier is an employer within the meaning of the FLSA.

14. To the extent Premier is not an employer within the meaning of the FLSA, it is an employer within the meaning of the Kansas Minimum Wage and Maximum Hours Law, K.S.A. 44-1201 *et seq.* ("KMWMHL").

15. Jurisdiction is proper in the District of Kansas pursuant to 28 U.S.C. § 1331, as some or all of Plaintiff's claims arise under the laws of the United States.

16. This Court has supplemental jurisdiction over Plaintiff's claims arising under the laws of the state of Kansas pursuant to 28 U.S.C. § 1367(a), as such claims are so related to Plaintiff's claims arising under the laws of the United States that Plaintiff's claims form part of the same case or controversy.

17. Venue is proper in the District of Kansas pursuant to 28 U.S.C. § 1391(b) as Premier's principal place of business is located within this District and it therefore resides within this District, and as a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District.

18. This Court has jurisdiction over the parties and the subject matter of this action.

## Additional Factual Allegations

19. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

20. On or about April 26, 2021, Plaintiff began working for Premier as an Office and Accounting Manager.

21. One of Plaintiff's job duties was to process payroll.

22. In approximately early September 2021, in the course of processing payroll, Plaintiff noted that some employees were not being paid wages at a rate of pay of one and one-half times their regular rate of pay for all work performed in excess of forty (40) hours per work week.

23. Specifically, the employees were being paid at their regular rate of pay for sixty-six (66) hours of work each during the work week in question without overtime pay.

24. The employees had worked at least sixty-six (66) hours during the work week each in question.

25. Plaintiff reasonably believed that the employees were entitled to overtime pay for work performed in excess of forty (40) hours per work week.

26. The employees were entitled to overtime pay for work performed in excess of forty (40) hours per work week.

27. The employees were entitled to overtime pay for work performed in excess of forty-six (46) hours per work week.

28. After noting the pay discrepancy in early September 2021, Plaintiff contacted Premier's Vice President (hereinafter "C.B.") and told him that by paying the employees in question only their regular rate of pay for all hours worked as opposed to of one and one-half times their regular rate of pay for all work performed in excess of forty (40) hours per work week, Premier was in violation of the FLSA.

29. In response to Plaintiff's concern that Premier was in violation of the FLSA, C.B. told Plaintiff that he has made this arrangement with the employees in question and that he was going to "do it the way he wanted to do it."

30. On or around September 12, 2021, Plaintiff contacted one of the employees in question to advise him not to deposit the check he had been given because it did not pay the full wages to which the employee was entitled under the FLSA.

31. On or around September 13, 2021, Plaintiff contacted Premier's acting human resources representative (hereinafter "P.Y.") to discuss the matter of the underpayment to employees.

32. On or around September 16, 2021, Plaintiff suggested to Premier's accounts receivable clerk that she should attend a sales tax webinar provided by the State of Missouri because Plaintiff

reasonably believed Defendant was improperly calculating customers' sales tax obligations and also failing to remit the amount collected as sales tax to the appropriate governing bodies.

33. In response to Plaintiff's suggestion regarding the webinar, the accounts receivable clerk complained to C.B.

34. In response to the accounts receivable clerk's complaint about Plaintiff, C.B. confronted Plaintiff.

35. C.B. told Plaintiff that Premier had been doing sales tax the same way for twenty (20) years and had never had a problem, so he did not see any reason to change.

36. Plaintiff told C.B. that she had spoken with Premier's outside accountant, who verified that Plaintiff's understanding regarding the sales tax issue was correct.

37. C.B. told Plaintiff that it "really look[ed] like [employment with Premier] wasn't working out for" Plaintiff.

38. The next day, on or around September 17, 2021, C.B. and Premier's President (hereinafter "M.B.") called Plaintiff while she was at home utilizing sick leave.

39. C.B. and M.B. told Plaintiff that they were accepting Plaintiff's resignation of her employment with Premier.

40. Plaintiff did not take any action that C.B. or M.B. could have reasonably interpreted as a tender of resignation of her employment.

41. Plaintiff understood C.B.'s and M.B.'s comments and actions to be the termination of her employment.

**COUNT I**
**Violation under 29 U.S.C. § 201 *et seq*.**
**FLSA – Retaliation**

42. Plaintiff re-alleges and incorporates herein by reference as though fully set forth herein, all of the above numbered paragraphs.

43. Plaintiff engaged in protected activities by filing a good faith internal complaint with Premier regarding its practice of not paying its employees at a rate of pay of one and one-half times their regular rate of pay for all work performed in excess of forty (40) hours per work week.

44. Premier terminated Plaintiff's employment.

45. Plaintiff's good faith internal complaint of Premier's unlawful conduct was a determining factor in Premier's decision to terminate her employment.

46. At all times mentioned herein, before and after, the above-described persons were agents, servants, and employees of Premier and were at all such times acting within the course and scope of their agency and employment, and/or their actions were expressly authorized by Premier, thus making Premier liable for said actions under the doctrine of *respondeat superior*.

47. Premier failed to make good faith efforts to establish and enforce policies to prevent illegal labor practices against its employees, including retaliation for engaging in protected activities such as good faith opposition to Premier's unlawful employment practices.

48. Premier failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the labor laws, including the FLSA.

49. As shown by the foregoing, Plaintiff suffered intentional retaliation at the hands of Premier based on her opposition to illegal labor practices in violation of the FLSA.

50. As a direct and proximate result of Premier's actions and/or omissions, Plaintiff has been deprived income, as well as other monetary and non-monetary benefits.

51. As a further direct and proximate result of Premier's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

52. By failing to take prompt and effective remedial action, Premier in effect condoned, ratified, and/or authorized the retaliation against the Plaintiff.

53. As shown by the foregoing, Premier's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Premier or to deter it and other employers from like conduct in the future.

54. Plaintiff is entitled to recover reasonable attorney's fees from Premier pursuant to 29 U.S.C. § 216(b).

WHEREFORE, Plaintiff requests that the Court enter judgement in her favor and against Defendant Premier Contracting, Inc., for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress; for equitable relief, including but not limited to front-pay and injunctive relief; for punitive damages; for reasonable attorneys' fees and costs incurred herein; for pre- and post-judgement interest as allowed by law; and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT II
### Wrongful Termination in Violation of Kansas Public Policy
### Retaliation for Opposition to Illegal Tax Practices

55. Plaintiff re-alleges and incorporates herein by reference as though fully set forth herein, all of the above numbered paragraphs.

56. The Kansas Legislature has enacted statutory provisions from which a public policy may reasonably be inferred that the state prohibits and makes unlawful the discharge of, or other discrimination against, an employee because such employee has opposed in good faith the employer's improper collection and payment of sales tax. *See* K.S.A. 79-3615.

57. Plaintiff made a good faith complaint to a manager at Premier that Premier was improperly collecting and paying sales tax.

58. Premier terminated Plaintiff's employment.

59. Plaintiff's good faith opposition of Premier's unlawful conduct was a determining factor in Premier's decision to terminate her employment.

60. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Premier and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by Premier, thus making Premier liable for said actions under the doctrine of *respondent superior*.

61. Premier failed to make good faith efforts to establish and enforce policies to prevent illegal labor practices against its employees, including retaliation for making good faith complaints of an employer's failure to comply with tax laws.

62. Premier failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under Kansas law.

63. As shown by the foregoing, Plaintiff suffered intentional retaliation at the hands of Premier based on her good faith opposition of illegal tax practices.

64. As a direct and proximate result of Premier's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

65. As a further direct and proximate result of Premier's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of garden variety emotional distress and related compensatory damages.

66. By failing to take prompt and effective remedial action, Premier in effect condoned, ratified, and/or authorized discrimination against the Plaintiff.

67. As shown by the foregoing, Premier's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Premier or to deter it and other employers from like conduct in the future.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Premier for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to garden variety emotional distress; for punitive damages; for costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such and further legal and equitable relief as the Court deems just and proper.

## COUNT III
**Wrongful Termination in Violation of Kansas Public Policy**
**Retaliation for Opposition to Illegal Wage Practices**
**(Pled in the Alternative to Count I)**

68. To the extent Plaintiff's above allegations are applicable to claims made pursuant to Kansas common law, and to the extent Plaintiff is not entitled to a claim of retaliation pursuant to the FLSA, Plaintiff hereby re-alleges and incorporates by reference the allegations contained in paragraphs 1-41 above as though set out fully herein.

69. The Kansas Legislature has expressed a well-established and clear mandate of public policy that the state prohibits and makes unlawful the discharge of, or other discrimination against,

an employee because such employee has made a complaint to her employer that she has not been paid wages in accordance with the KMWMHL. *See* K.S.A. 44-1210(b).

70. Plaintiff made a good faith complaint to a manager at Premier that Premier was in violation of the KMWMHL's overtime pay requirements.

71. Premier terminated Plaintiff's employment.

72. Plaintiff's good faith opposition of Premier's unlawful conduct was a determining factor in Premier's decision to terminate her.

73. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Premier and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by Premier, thus making Premier liable for said actions under the doctrine of *respondent superior*.

74. Premier failed to make good faith efforts to establish and enforce policies to prevent illegal labor practices against its employees, including retaliation for making good faith complaints of an employer's failure to comply with overtime laws.

75. Premier failed to properly train or otherwise inform their supervisors and employees concerning their duties and obligations under the labor laws, including the KMWMHL.

76. As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of Premier based on her report of illegal labor practices in violation of the KMWMHL.

77. As a direct and proximate result of Premier's actions and/or omissions, Plaintiff has been deprived income, as well as other monetary and non-monetary benefits.

78. As a further direct and proximate result of Premier's actions and/or omissions, Plaintiff has suffered humiliation, mental anguish, pain, and a loss of self-esteem in the form of emotional distress and related compensatory damages.

79. By failing to take prompt and effective remedial action, Premier in effect condoned, ratified, and/or authorized discrimination against the Plaintiff.

80. As shown by the foregoing, Premier's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus justifying an award of punitive damages in an amount sufficient to punish Premier or to deter it and other employers from like conduct in the future.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Premier for economic damages, including but not limited to back-pay and lost benefits; for compensatory damages, including but not limited to emotional distress; for punitive damages; for costs incurred herein; for pre- and post-judgment interest as allowed by law; and for such and further legal and equitable relief as the Court deems just and proper.

## **Demand for Jury Trial and Designation of Place of Trial**

Plaintiff requests a trial by jury, in Kansas City, Kansas, on all counts and allegations of wrongful conduct alleged in this Complaint.

Respectfully Submitted,

**CORNERSTONE LAW FIRM**

By:  */s/ Joshua P. Wunderlich*
Joshua P. Wunderlich          D. Kan. #78506
j.wunderlich@cornerstonefirm.com
5821 NW 72nd Street
Kansas City, Missouri 64151
Telephone          (816) 581-4040
Facsimile          (816) 741-8889

**ATTORNEY FOR PLAINTIFF**